77  85
22a 127

JESSE J. YOAKUM *et al.*

*v.*

WILLIAM YOAKUM *et al.*

1. MENTAL CAPACITY TO CONTRACT—*reasonableness of the contract may be considered on the question.* On the question, whether a party has the mental capacity to contract, where undue influence is alleged in procuring the same, it seems that the reasonableness of the contract made may be considered.

2. EVIDENCE—*when a clear preponderance is required.* Where a father, of great age, as well as ignorant and infirm, conveyed his real estate to his sons, in consideration he should have a lease of them for life for the support of himself and wife, and one of the sons took him to an attorney, who, at the instance of the son, altered the deed by inserting a provision that the grantees should furnish the father a support during life, it was *held*, that the change was so manifestly against the interest of the father, that a court of equity would not act upon the assumption that it was made by the father's deliberate consent, unless the proof to that effect was entirely clear and convincing.

3. CHANCERY—*enforcing performance of condition upon which a conveyance is made.* Where a father made a conveyance of all his lands to his five sons, upon the consideration that he was to have the use and control

of the same during life, for his support and maintenance, and that the sons should pay their sister $1000 as her share of the estate, and the sons took possession of the land, and refused to give their father a life lease of the same, it was *held*, that a court of equity would enforce the contract as made, and compel the sons to surrender possession to their father, and pay him for the rents and profits, less the taxes, and money expended for necessary repairs, and to execute a lease of the same to the father for life, and declare the claim of the sister a lien on the land, payable at the father's death.

APPEAL from the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge, presiding.

This was a bill in equity, by appellees against appellants and others, praying that certain conveyances of lands in Sangamon and Menard counties be set aside.

The material allegations of the bill, as finally amended, are: The complainant William Yoakum, prior to and at the time of his marriage with the complainant Letitia, was the owner of certain described real estate in the counties of Sangamon and Menard, and had five grown sons by a former marriage—George, Isaac R., Milton, James C. and Jesse J.— who are made defendants. Sometime subsequent to the marriage, and at the instance of these sons, the complainant William being then over eighty years of age, and the complainant Letitia fifty years of age, and both being infirm, and unable either to read or write, they conveyed the lands to them, with the understanding and upon the sole consideration that they should execute to the complainant William, or have reserved to him, in legal form, a life estate in said lands, so that he would have a certain and ample support therefrom, within his own control, during his natural life.

It is charged that the complainant William, being ignorant of legal forms, unable to read or write, and very infirm; signed the deeds for the lands as requested, supposing that a life estate had been reserved in the deeds, or that it would be secured to him immediately after executing the deeds; that as soon as he ascertained that the lease had not been reserved in

the deeds, and that the defendants were making no mention of executing one separately, and after frequent requests, Jesse Yoakum, one of the defendants, took the complainant William before his attorney, to have the life lease prepared; and after the attorney and Jesse consulted together, Jesse had the attorney to interline in the deeds these words: "And as a further consideration for this conveyance, the said parties of the second part hereby agree and promise to furnish to said William Yoakum, party of the first part, all necessary support, maintenance and care for him during his natural life, and a lien is hereby expressly reserved upon said lands to secure such support, maintenance and care;" that Jesse told the complainant this language was as good as a life lease; that it was inserted in the deeds by Jesse without any particular reference to the wishes of complainants, and that it was done as a mere evasion of the contract to make a life lease.

It is also further charged that, since the execution of the deeds, the defendants have succeeded in getting all the personal property of the complainant William; that the defendants gave no consideration for the deed except their said agreement; that, since the execution of the deeds, the defendants have had the lands partitioned by order of the circuit court of Sangamon county; that they have encumbered or sold some portions of the land; that they have failed to provide for the support of the complainants, and have taken possession of the lands, to the exclusion of the complainant William; and that the defendants have fixed up an old school house on an acre of land as a residence for the complainant Letitia.

The joint answer of the defendants, except Polly Ann Penny, admits the execution of the deeds by the complainants, as charged, but alleges that it was the voluntary act of the complainants; that the contents of the deeds were fully made known and explained to them; that the defendants actually paid $250, and the balance was an advancement to them by their father; that the complainant William did not, nor

did he have any reason to, expect that a lease would be executed on a separate paper, or otherwise. It admits that, after the execution of the deeds, their father expressed a desire that some provision for his support be made, secured upon the lands; that the defendant Jesse, and his father, called upon an attorney, to whom the complainant William personally explained his wishes, and the attorney prepared and explained to him the provision set out in the bill; and after it was fully explained to him, the attorney wrote it in the deeds, by direction of the complainant William, as it now appears, and that the deeds were then delivered to Jesse Yoakum, and placed upon record. It concludes by professing the defendants' willingness to keep the complainant, their father, and provide for his support, etc.

Polly Ann Penny's answer alleges: she is the daughter of the complainant William; claims a lien upon the lands for $1000, which it was agreed between her father and his sons should, in the distribution of the lands, be paid to her, and alleges this agreement to have been a part of the consideration of the conveyance of the lands. She also filed a cross-bill, setting up the same facts as in her answer, and praying that the payment of the $1000 be declared to be a lien upon the lands.

No answer was filed to the cross-bill, and the parties defendant thereto were defaulted.

Evidence was heard, which it will be unnecessary to refer to, as it will be sufficiently noticed in the opinion.

The following is the substance of the decree, and recitals therein :

"The court finds, by the decree, that the deeds in the pleadings mentioned were executed by reason of undue influence exercised over the minds of the complainants by certain of the defendants.

"The court further finds that, at the time of the execution of the deeds, it was understood by the complainants that they were to receive, contemporaneously with the execution of the

deeds, a life lease from the grantees, or that a reservation should be made in the deeds securing to the complainants the full possession and enjoyment of the lands mentioned in the deeds, during their natural lives.

"The court further finds, that the interlineation made in the deeds—set out in exhibit "A"—was supposed by the parties to the deeds to convey or reserve to the grantors an interest for life in the property conveyed by them, but the court finds that the deeds so interlined did not express the true intent and meaning of the parties to the deeds.

"And the court further finds, that complainant William Yoakum was infirm in body and mind; that neither of the complainants could read or write, and that they had but imperfectly understood the nature of the transaction.

"The court, therefore, orders that the deeds be set aside, and possession delivered to William Yoakum; that Letitia Yoakum pay to the grantees in the deeds $250, and that the cross-bill of Polly Ann Penny be dismissed."

Messrs. JOHN M. & JOHN MAYO PALMER, for the appellants.

Messrs. CULLOM, SCHOLES & MATHER. Messrs. HERNDON & ORENDORFF, and Messrs. ROSETTE & BRO., for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

We can not concur in the view of the court below, that the deeds were made by the complainants by reason of the undue influence of the defendants, or either of them, over their minds. The evidence preserved in the record shows that they were old, ignorant and infirm, and they were, consequently, more liable to be deceived and misled than would have been possible otherwise; yet there was sufficient capacity to contract, and the evidence is they did contract, and the deeds were voluntarily executed in attempted compliance with their part of the contract.

In our opinion, however, the clear preponderance of the evidence is, the deeds were executed upon the consideration that the complainant William was to have the use and absolute control of the lands during his life; that his five sons, to whom the conveyances were made, were to pay the complainant Letitia $250 for signing the deeds and relinquishing her dower, which has been paid, and that they were also to pay their sister, Polly Ann Penny, $1000. This was not so unreasonable as to raise a presumption of want of capacity in the complainant William. It guaranteed to him a home and certain support during his life, and it provided for what we are led to suppose was a reasonably fair division of his property among his children, after his death.

In view of the great age, as well as ignorance, of the complainant William, taken in connection with the other evidence, we do not regard the alteration in the deeds, made by the attorney, as being his act. We have no doubt the attorney acted in good faith, and supposed what he was doing was the desire of both parties present; but it is apparent, from the evidence, he assumed, as it was quite natural he should, that there was a complete understanding between them, and that the desire of the one was the desire of the other. It is now evident this was not the fact. Jesse wanted the immediate control of the property for himself and brothers, while his father wanted its control during his life.

The attorney says: "I don't recollect whether there was anything said about a life lease. or any other kind of lease; indeed, I can not remember the language employed by any of them, but I ascertained, as I thought, from the conversation between them, that it was the desire of all the parties to the deeds, so far as they were represented there, that the old gentleman should have a support secured upon these lands in some way or other. *  *  *  My suggestion seemed to meet their approbation."

The evidence of the complainant is positive, that neither at that time, nor at any other, did he want or consent to any-

thing short of a lease of the lands for his life; and that such was the understanding and intention when he executed the deeds, is, as we have before observed, shown by a clear preponderance of the evidence.

It is so manifestly against the interest of an old, helpless man to surrender the present means of a comfortable support, and accept, in lieu thereof, mere individual obligations to maintain him, even if the obligors are his own children, that a court of equity should never act upon the assumption that it has been done, unless the proof to that effect is entirely clear and convincing. In the present case, such proof is wanting.

We are of opinion that the contract, as made, should be carried into effect.

The decree of the court below will be reversed, and the cause will be remanded to that court, where a decree will be entered directing the defendants, to whom the conveyances were made, to surrender immediate possession of the lands to the complainant William, and execute to him a lease for the same during his life; that thereafter an account be taken of the rents and profits of the land, after deducting such sums as have been paid for taxes and necessary repairs, during the time such defendants have had possession thereof, which shall be paid to the complainant; and that the claim of Polly Ann Penny be declared a lien upon said land, payable at the death of the complainant William.

*Decree reversed.*

Mr. CHIEF JUSTICE WALKER: I think the decree should, on the authority of former decisions of this court, be affirmed.